JUDGE COFER
delivered the opinion of the court.
The appellees were indicted in the Spencer Circuit Court for retailing liquors in violation of the “ Act to regulate the sale of spirituous, vinous, and malt liquors in this Commonwealth,” commonly called the “ local-option law.” The case was submitted to the court on a plea of not guilty by the defendants, and the indictment was dismissed.
At the regular August election in 1874 a vote was taken on the question whether liquors should be sold within the corporate limits of the town of Taylorsville. At that election the county judge and sheriff were candidates for reelection, and were thereby disqualified to act as members of the board to examine and compare the polls, and their places were filled by two justices of the peace, who, with the county clerk,' composed the board and certified to the county court the result of the vote under the local-option law, which was against the sale of liquors.
*670 The circuit court was of the opinion that the county judge and sheriff were only disqualified to sit as members of the board in comparing the polls in their own cases, and that the two justices of the peace had no power to act beyond those cases, and that their certificate of the result of the vote was therefore void, and consequently that there was no legal evidence that the vote had resulted against the sale of liquor.
The county judge, clerk, and sheriff compose the board for comparing the polls. If any one of them is a candidate he is not entitled to a voice in the decision of his own case. If from any cause two can not act in whole or in part, “ their places shall be supplied by two justices of the peace who may reside nearest the courthouse.” (Sec. 1, art. 5, chap. 33, General Statutes.)
That is, when only one is a candidate he still remains a member of the board, but has no voice in deciding his own casé; but if two are disqualified they shall 'not act at all, but their “places shall be filled” by two justices of the peace, who become members of. the board in the room and stead of the two officers disqualified to act, and the board thus constituted is to perform all the duties that would have devolved on it if composed of the county judge, clerk, and sheriff.
We are therefore of the opinion that the court erred in holding that the vote was not legally certified.
The selling, of which the appellees were accused, was done during the year 1877; they were indicted in April, 1878, and tried in October of that year.
In August, 1878, a second vote was taken under the law, which resulted in favor of the sale of liquor. The appellees offered that vote in evidence, and their counsel now contend that this vote operated to repeal the local-option law in the town of Taylorsville or to suspend its operation, and that, as the indictment is for violating that law, no conviction can be had after it is repealed or suspended.
*671 A person can not be convicted of a criminal offense unless the violated law is in force at the time of the trial as well as at the time of its violation.
The repeal of a criminal or penal statute leaves the courts without authority to render judgment, unless it has been continued in force as to offenses committed under it. (Commonwealth v. Welch, 2 Dana, 230; Acree v. Commonwealth, 13 Bush, 353.)
But was the local-option law repealed or suspended by the second vote?
Before proceeding to answer this inquiry, it may be well to consider the nature and character of the law, and the manner in which it operates, and the principles which underlie it.
In Anderson v. Commonwealth, 13 Bush, 485, this court unanimously decided “ That the question of license or no license is one properly of local police, and may be constitutionally left to the decision and discretion of the lawfully-created agencies representing and acting for the local public, to be immediately affected by the retail-liquor traffic, such as the county courts, and the municipal authorities of towns and cities. And further, that the legislature may create other agencies to determine this local question, and that it is no constitutional objection to the agencies created by the act” commonly called the “ local-option law,” “ that they are composed of the body of the qualified voters of the city, town, or civil district in which the necessary steps may be taken to test the sense of such voters on the subject of such retail traffic.”
In other words, we held that the legislature had constitutional power to confer upon the qualified voters of a local community power to decide whether the retail traffic in alcoholic liquors should be permitted to be licensed in such community or not. We did not recognize the idea that, the people made the law, but based our decision distinctly on the ground that the only power the voters possessed under the act was *672 as agencies of the law to determine a question of local police. The legislature has, ever since the establishment of the state government, exercised the power to prohibit the retail traffic in liquors by any other than persons specially licensed for the purpose, and has delegated to designated local agencies, such as county courts, and the authorities of incorporated towns and cities, the discretion to grant or refuse licenses, as they should deem most conducive to the well-being of the local public.
The local-option law does not differ in principle from the former legislation restraining the liquor traffic. It merely extends the restriction by adding another agency, with power to refuse to permit licenses to be granted. The voters may, by exercising the power given them in the act, render the granting of licenses unlawful. But in doing so they do not make law. They do no more than county courts and municipal authorities have always done — they exercise a police power conferred upon them by the legislature. If they vote against it, the traffic is not thereby made unlawful. That was so before, unless the dealer had a license. The voters now have power to say he shall not have license. This is no new power. It has always existed in some agency of the law, and the local-option law has merely transferred the power, or a part of it, to another depository. But it has still left a residuum of the power in the county courts and municipal authorities. They may still exercise the power as formerly, until the voters have exercised the power vested in them, to prohibit the traffic altogether. And when the voters have refused to exercise their power to prohibit, the county courts and municipal authorities, having power to grant licenses, still have a right to refuse to grant them, as formerly.
With these views of the nature of the local-option law, we proceed to the inquiry more immediately involved in this case, viz. what was the effect of the second vote of the people of Taylorsville?
*673 Section 1 of the act provides that when certain requirements therein have been complied with an election shall be held “ for the purpose of taking the sense of the legal voters in said district, town, or city upon the proposition whether or not spirituous, vinous, or malt liquors shall be sold therein.”
And section 9 provides that “ the election herein provided for shall not be held oftener than every two years.” The act does not say that no election shall be held after the people have voted once against the sale of liquors. It evidently contemplates more than one vote on the subject in the same district, town, or city, and the only reason furnished by the act itself tending to the conclusion that it was not intended that there should be a second vote. after one had resulted against the traffic, is found in the fact that there is no provision for certifying the result when the vote is in favor of it. But there is no necessity for such a certificate. The record of the county court will show that an election has been ordered, and as it is made the duty of the officers composing the polls to certify the vote if it be against the salg of liquor, the absence of such certificate is sufficient evidence that the vote was in favor of its sale.
An intention that the question might be submitted every two years without reference to previous votes is not inconsistent with any thing contained in the act, and harmonizes with the object in view in enacting it. A strong public sentiment had grown up in many localities- against the retail trade in liquor. At each succeeding session the General Assembly was asked by many local communities to prohibit the trade among them. These applications led to counter petitions from those entertaining different views or whose interests would be affected by such legislation. These applications became so frequent as to become embarrassing and annoying to the legislature. The practice of submitting questions, peculiarly affecting particular localities, to be voted upon by the people to be affected, had *674 become common. Other questions of local police were frequently submitted to the control of the local authorities, and in order to meet the demand for so much special local legislation to meet the views or necessities of different localities, and to remove the question of traffic in ardent spirits as far as possible from the arena of polities, and at the same time to consult as far as possible the wishes and necessities of each local community, the local-option law was enacted. The purpose it was designed to accomplish could not be accomplished otherwise than by providing for the periodical submission of the question to the vote of each civil district, town, or city in the state. If after the people of a given locality have voted against the sale of liquors those in favor of such sale are thereafter forever debarred from again testing the sense of the voters on the subject, the statute becomes an absolute prohibitory law, and liquor can never be lawfully retailed in such locality without action by the legislature. This would restore one of the very evils the law was intended to remedy by compelling the advocates ef the traffic to seek relief at the hands of the legislature from absolute prohibition resulting from a former vote.
We are therefore of the opinion that the law authorized the vote taken in August, 1878, and that after the result of that vote was officially ascertained the consequences of the former vote were so far removed that it was not an offense against the local-option law to thereafter retail liquors in Taylorsville. Since that time the subject has been regulated by other laws.
But as the vote first taken did not create the local-option law, so also the second vote did not repeal it. When that statute came from the legislative hand it was a complete law, and it at once went into effect in every part of the state, and will so continue until repealed by the legislature. It is not a correct use of language to say that the people of any locality *675 adopted or refused to adopt the local-option law. The people have no power to do either. The legislature enacted the law, and in it conferred upon the legal voters of every civil district, town, and city in the Commonwealth power to decide whether liquors should be retailed within such district, town, or city, just as it had previously conferred precisely the same power upon county courts and municipal authorities by making the retail sale of liquors without a license unlawful, and then giving them power to grant or refuse license to carry on the traffic.
The law which made the selling of liquors by the appellees unlawful has not been repealed, nor has its operation been suspended. Its penalties have not been incurred by those who may have sold liquors in Taylorsville since the last vote, because by the operation of that vote the sale of liquors has not since been prohibited by the local-option law. It is only when the vote is against the sale that that statute declares selling to be unlawful.
The law violated by the appellees is still in force, and still declares that the acts with which they are charged were offenses against its provisions, and it denounces the same penalties now that it did then against those who violate it. That those who sell now do not violate its provisions is not because the law has been repealed or has ceased to operate, but because the legal voters having voted in favor of allowing liquors to be sold, it is not a violation of that law to sell them.
The legislature may make the legal quality of an act depend upon the action or non-action of an agency created by law, as is well illustrated by our entire license system. All persons not having a license from the designated authority are inhibited from selling liquors, to be drunk on the .premises where sold.
No one will pretend that the granting of a license which secures to the licensee immunity from the penalty denounced *676 against those who sell, is a repeal or suspension of the law imposing the penalty.
The law continues in force, but the license protects the person holding it against the penalty. He does not violate the law, because the law does not apply to him. But if he violated it before he obtained his license, he may be punished afterward. So with the appellees. If they sell liquors in Taylorsville now they do not violate the local-option law, because its penalties are only denounced against those who sell after the people have voted against permitting liquors to be sold, and while their decision is unrevoked.
' The people not having legislative power, and the legislature having no power to invest them with it, they can neither make nor unmake laws. Nor can they impose or remit penalties. Their action can not retroact so as to relieve those who have violated the law from penalties they thereby incurred. This can only be done by the legislature.
We are therefore of the opinion that the vote in August, 1878, had no other effect except this, that thereafter until the people shall again voté against the sale of liquors in Taylorsville, the subject is regulated by the provisions of the General Statutes, and those who sell do not violate the local-option law.
Judgment reversed, and cause remanded for a new trial upon principles not inconsistent with this opinion.